MURDOCK, Justice.
This consolidated appeal and petition for a writ of mandamus concerns two rulings by the Jefferson Circuit Court (“the circuit court”). First, Regions Bank (“Regions”) appeals a writ of mandamus issued by the circuit court ordering the Jefferson Probate Court (“the probate court”) to dismiss a petition for final settlement filed by Regions concerning its administration of certain trusts (case no. 1081619). Second, Regions petitions this Court for a writ of mandamus directing the circuit court to dismiss or stay an action filed in the circuit court by Jean W. Reed, Mary W. Haynes, and Susan W. Stockham, individually and as trustees of various family trusts (hereinafter referred to collectively as “the sisters”). With respect to the appeal, we reverse the circuit court’s issuance of the writ of mandamus to the probate court. We grant in part and deny in part Regions’ petition to this Court for a writ of mandamus directed to the circuit court.

I. Facts and Procedural History

The sisters are the daughters of Clement and Elizabeth Walter. In December 1974, Clement Walter established the “Clement S. Walter Trust” (“the Father Trust”). The original trustees of the Father Trust were Elizabeth Walter and First National Bank of Birmingham. An amendment to the trust changed the corporate trustee to First Alabama Bank, which, through a succession of corporate transactions, is now Regions. Upon Elizabeth Walter’s death, the trust instrument designated that the sisters were to benefit *872 from the Father Trust in equal shares for the duration of their lives and that the sisters were to be cotrustees with Regions of the Father Trust.
In 1982, Elizabeth Walter created three separate irrevocable trusts (“the Mother Trusts”), one to benefit each of the sisters. The Mother Trusts were established to provide income to each of the sisters for her life. Stockham is designated as the sole trustee of the Mother Trusts created for the benefit of Reed and Haynes. Stockham and Regions are designated as cotrustees of the Mother Trust created for the benefit of Stockham.
In 1983, Regions entered into “custody agreements” with regard to the Mother Trusts created for the benefit of Reed and Haynes under which Regions agreed to act as the custodian of the assets of those trusts. In 1994, Regions entered into separate (but identical) “Investment Agency Agreements” with the Mother Trusts created for the benefit of Reed and Haynes. In those agreements, Regions undertook the responsibility to manage the investments for those trusts.
On May 4, 2004, Stockham established a revocable trust (“the Stockham Trust”) under which she is the sole beneficiary for the duration of her life. The trust designated Regions as the sole trustee. On the same date, Haynes established a revocable trust (“the Haynes Trust”) under which she is the sole beneficiary for the duration of her life. The trust designated Regions as the sole trustee.
The sisters allege in the circuit court action that they are “of a mature age” and that they “rely heavily upon the income from these various trusts to support themselves. Accordingly, they desired that the assets in these trusts should be invested in “stable, conservative, low-risk holdings that produced a secure stream of income.” They allege that Regions was aware of and had a duty to follow these instructions.
The sisters allege that Regions actually invested the assets of these trusts in certain funds that were established and operated by companies closely affiliated with Regions, and that those funds “were, in reality, very high risk and lacking in diversification.” According to the sisters, those funds also were “plagued with extremely severe problems” that caused them to be unstable and unsuccessful. The sisters claim that Regions invested in those funds at least in part on the advice of Morgan Asset Management, Inc. (“MAM”), the investment-advisory arm of Regions Financial Corporation, the parent corporation of Regions. The sisters allege that both Regions and MAM knew that the funds were high-risk investments and that they were plagued with problems, yet MAM advised Regions to invest the assets of the various trusts in them, and Regions did so despite knowing the desired goals of the sisters for the trust assets.
According to the sisters, in 2008 several class action lawsuits were filed in Tennessee federal district courts against Regions (and others) as the trustee of certain trusts for alleged violations of securities laws relating to investments made by Regions in the funds described above. In response to the Tennessee class actions, Regions filed in the probate court a “Petition for Instructions and Declaratory Judgment” relating to Alabama trusts for which Regions served as a trustee. Regions requested that the probate court appoint a trustee ad litem to participate in the class-action litigation and to represent the interests of the trust accounts. The probate court granted Regions’s request. Upon receiving notice of the appointment of the trustee ad litem, the sisters (and others) filed motions to intervene in the probate court proceeding to protect their own interests. The probate court denied the motions to intervene, but it allowed *873 beneficiaries of the subject trusts to opt out of representation by the trustee ad litem. The sisters subsequently exercised their right to opt out.
On November 14, 2008, the sisters sent Regions a letter informing it that they were removing Regions as trustee or co-trustee of the Father Trust, the Mother Trust created for the benefit of Stockham, the Stockham Trust, and the Haynes Trust. The letter also stated that the sisters were terminating Regions as custodian and agent of the Mother Trusts created for the benefit of Reed and Haynes. The letter added that the sisters “specifically reserve the rights to pursue any claims against Regions or its affiliates for mismanagement or misappropriation of these trusts or their assets.”
On November 19, 2008, Regions filed a “Petition for Final Settlement” in the probate court (“the final-settlement action”) pursuant to § 19-3B-205, Ala.Code 1975,[1] concerning the trusts for which it served as trustee or eotrustee: the Father Trust, the Mother Trust created for the benefit of Stockham, the Stockham Trust, and the Haynes Trust.[2] The petition sought a final accounting for these trusts for the period for which Regions served as trustee or cotrustee, and it requested that, following the final accounting and any required payments, “the Court will order that Regions Bank be fully relieved and discharged with respect to all its acts and doings as Trustee or Co-Trustee, as the case may be, of any and all of the Trusts.”
On November 20, 2008, the sisters filed the above-referenced action in the circuit court (“the circuit court action”). The sisters’ complaint named as defendants Regions, MAM, and fictitiously named parties and alleged breach of fiduciary duty, negligence, wantonness, breach of contract, fraud, negligent indemnity, violation of the Alabama Securities Act, conspiracy, and aiding and abetting breaches of duty and law. The claims encompassed both the trusts for which Regions served as trustee or cotrustee as well as the two trusts for which it served as agent and custodian, i.e., the Mother Trusts created for the benefit of Reed and Haynes. The gravamen of the complaint is that Regions knowingly invested the assets of the trusts in — and MAM advised Regions to invest the assets trusts in — unstable, high-risk funds affiliated with Regions that were experiencing severe financial problems. The complaint requests damages of at least $400,000 and makes a demand for a jury trial.
*874 On November 24, 2008, Stockham filed in the probate court a motion to dismiss or to transfer to the circuit court the final-settlement action on the ground that the probate court lacked jurisdiction to hear the sisters’ claims against Regions. In its response to the motion to dismiss, Regions argued that, pursuant to § 19-3B-203(b), Ala.Code 1975,[3] the probate court had jurisdiction to hear in the final-settlement action any claims brought by the sisters against Regions alleging maladministration of the assets of the trusts for which it served as trustee or cotrustee, as well any claims against Regions alleging mismanagement of the assets of the trusts for which it served as agent and custodian.
On January 8, 2009, Regions filed an answer in the circuit court to the circuit court action. In that answer, Regions did not plead the affirmative defense of abatement. On February 11, 2009, however, Regions filed an amended answer in which it specifically pleaded the affirmative defense of abatement based on § 6-5-440, Ala.Code 1975.[4] On the same date, Regions filed a motion to dismiss or to stay the circuit court action pursuant to § 6-5-440. In that motion, Regions again noted that it believed the probate court had jurisdiction, pursuant to § 19 — 3B—203(b), Ala.Code 1975, to hear all the claims brought in the circuit court action.
On March 26, 2009, the probate court issued an order denying Stockham’s motion to dismiss or to transfer the final-settlement action. In its order, the probate court concluded that “Regions’ Petition for Final Settlement was properly and timely filed” and that by bringing its action “Regions does not curtail potential claims against it. Rather, [the sisters] may object to the requested relief and assert any claims against Regions relating to the administration of the trusts in this proceeding for adjudication by this Court.” The probate court based its jurisdiction on its interpretation of § 19-3B-203(b), finding that the statute gave the probate court
“concurrent jurisdiction with the circuit court in any proceeding involving a testamentary or inter vivos trust. As a result, this Court ... may hear any matter concerning a trust’s administration, including without limitation an action to ‘determine the liability of a trustee for an action relating to the trust and to compel redress of a breach of trust by any available remedy.’ Ala. Code [1975,] § 19-3B-201(d)(13).”
The probate court went on to state that “[i]t is the Circuit Court action — filed subsequently to this action — that should be dismissed or stayed pursuant to Ala. Code [1975,] § 6-5-440.”[5]
*875 On April 16, 2009, the sisters filed a petition for a writ of mandamus in the circuit court (“the mandamus proceeding”) seeking an order directing the probate court to withdraw its March 26, 2009, order denying Stockham’s motion to dismiss the final-settlement action and to enter an order dismissing the entire final-settlement action. On August 11, 2009, pursuant to Rule 42(a), Ala. R. Civ. P.,[6] and with the consent of Regions and the sisters, the mandamus proceeding was transferred to Jefferson Circuit Court Judge Michael Graffeo’s docket and consolidated with the circuit court action, which was already pending before him.
Also on August 11, 2009, the circuit court entered an order granting the sisters’ petition for a writ of mandamus directing the probate court to vacate its order denying Stockham’s motion to dismiss the final-settlement action and to dismiss in its entirety the final-settlement action without prejudice in order to allow Regions to raise any matters it asserted in the probate court as counterclaims in the circuit court action. In its order, the circuit court observed that Article VI, § 142(b), Ala. Const.1901, provides circuit courts with “general jurisdiction in all cases except as may be otherwise provided by law” and provides them with authority “to review decisions of inferior courts.” It noted that § 12-11-30, Ala.Code 1975, empowers circuit courts to “exercise a general superintendence over all ... probate courts.” After establishing its general supervisory authority, the circuit court held that
“the Probate Court has abused its discretion by attempting to assert its authority over matters where it simply lacks jurisdiction. Specifically, the Probate Court attempts to exert jurisdiction over the claims at law for money damages which [the sisters] have asserted in [the circuit court action], asserting that said claims constitute compulsory counterclaims in the purported accounting action filed by Regions Bank in Probate Court.”
The circuit court reasoned that § 12-11-30, Ala. Code 1975,
“clearly states ... that ‘the circuit court shall have exclusive jurisdiction over all civil actions in which the amount in controversy exceeds ten thousand dollars ($10,000).’ Thus, the Alabama Legislature, acting under the authority of Ala. Const., Art. VI, § 142, has clearly mandated that only the Circuit Court shall [have] jurisdiction over civil suits, at law, such as tort claims, for money damages where the amount in controversy exceeds ten thousand dollars ($10,000), which is the case with regard to the claims brought by [the Sisters] in [the circuit court action], sounding in tort, for money damages.... ”
The circuit court went on to find that § 19-3B-203, Ala.Code 1975,
“does not give the Probate Court of Jefferson County jurisdiction to hear actions and claims at law, e.g. tort claims, such as those asserted by [the sisters] in [the circuit court action]. Rather, this Court construes § 19-3B-203 to simply preserve the equity jurisdiction already bestowed upon those Courts mentioned in subsection (b) of said statute by previous legislation, and not to enlarge the jurisdiction of those Probate Courts, such as the Probate Court of Jefferson *876 County, to hear and address ‘at law’ tort claims for money damages such as those asserted by [the sisters] in [the circuit court action]. It naturally follows that, since the Probate Court lacks jurisdiction to hear those claims, they cannot be held to be compulsory counterclaims in the action which Regions has filed in the Probate Court.”
The circuit court further held that allowing the final-settlement action to proceed “would be a waste of judicial resources and contrary to the desirable goal of judicial economy” because, in addition to the damages claims made against Regions in its capacity as trustee or cotrustee of several of the trusts, the sisters brought other claims in' the circuit court action “which could [n]ever be heard in the Probate Court.” Specifically, the circuit court referred to the claims against Regions as an agent and custodian of the Mother Trusts created for the benefit of Reed and Haynes and the claims against MAM in its capacity as a financial advisor to Regions in investing assets of all the trusts. The circuit court stated that these claims were not, and could not be, part of the final-settlement action because they did not involve Regions’ actions as a trustee and that “[j]udieial economy would not be promoted by litigating these claims’ piecemeal separately from [the final settlement action].”
Finally, the circuit court also found that allowing the final-settlement action “to proceed to conclusion on a nonjury basis, while the [sisters] in the [circuit court action] are entitled to adjudicate their claims through a jury trial, creates an unacceptable and unnecessary risk of inconsistent adjudications.”
Also on August 11, 2009, the circuit court entered an order denying Regions’ February 11, 2009, motion to dismiss or to stay the circuit court action. In its order, the circuit court adopted the reasoning set forth in its order granting the sisters’ petition for a writ of mandamus directed to the probate court.
On August 18, 2009, Regions filed a “Motion to Certify for Interlocutory Appeal the Circuit Court’s denial of Regions’ Motion to Dismiss or Stay,” and Regions sought a stay of all proceedings in the circuit court pending the interlocutory appeal. On August 24, 2009, the circuit court denied Regions’ motion.
Regions appealed the circuit court’s writ of mandamus directing the probate court to dismiss the final-settlement action. Regions filed a petition for a writ of mandamus with this Court seeking an order directing the circuit court to vacate its August 11, 2009, order denying Regions’ motion to dismiss the circuit court action.[7] On November 2, 2009, this Court entered an order issuing a stay of all proceedings in the circuit court pending this Court’s resolution of Regions’ appeal and its petition for a writ of mandamus.

II. Standard of Review

As mentioned above, the circuit court adopted the reasoning from its order issuing a writ of mandamus to the probate *877 court in its order denying Regions’ motion to dismiss or to stay the circuit court action. The circuit court’s order issuing a writ of mandamus involves only questions of law. Therefore, the same standard of review applies to both the appeal and the petition: a de novo standard. See, e.g., George v. Sims, 888 So.2d 1224, 1226 (Ala.2004) (observing in a case in which the plaintiff sought a petition for mandamus that “[bjecause the facts are undisputed and we are presented with pure questions of law, our standard of review is de novo.”).

III. Analysis

As a preliminary matter, the sisters have filed a motion to dismiss Regions’ appeal of the circuit court’s ruling on the sisters’ petition for a writ of mandamus directed to the probate court (case no. 1081619). They contend that the circuit court’s consolidation of that mandamus proceeding with the circuit court action caused the two actions to become one case. The sisters argue that the circuit court’s ruling on the mandamus proceeding was not a final judgment because, they say, the claims in the original circuit court action remain to be adjudicated, and Regions did not obtain a certification under Rule 54(b), Ala. R. Civ. P., that the circuit court’s ruling on the mandamus proceeding was final and appealable. Therefore, the sisters reason, it is incumbent upon this Court to dismiss as from a nonfinal judgment Regions’ appeal of the circuit court’s ruling on the sisters’ petition for a writ of mandamus directed to the probate court, leaving before us only the mandamus petition filed by Regions in this Court.
The sisters’ argument misapprehends the nature of a mandamus proceeding. A writ of mandamus is a remedy sought for correcting a particular ruling by a lower court. It is not an appeal of a party’s claim that transfers jurisdiction of any portion of a case to the court in which the petition for the writ of mandamus is filed. As this Court explained in State v. Webber, 892 So.2d 869 (Ala.2004):
“The filing of a petition for a writ of mandamus against a trial judge does not divest the trial court of jurisdiction, stay the case, or toll the running of any period for obeying an order or perfecting a filing in the case. The petition for a writ of mandamus, if meritorious, merely prompts the appellate court to exercise its supervisory power to tell the trial judge, as an official, as distinguished from the trial court itself, to do his or her duty when that duty is so clear that there are no two ways about it. Further, a petition for a writ of mandamus is not a substitute for an appeal.”
892 So.2d at 871 (citations omitted).
Thus, the sisters’ petition for a writ of mandamus in the circuit court did not transfer jurisdiction of the final-settlement action — or any particular claim involved in that action — to the circuit court. Rule 54(b), Ala. R. Civ. P., permits a trial court to “direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.” (Emphasis added.) Rule 54(b) provides a mechanism for appealing a judgment on fewer than all the claims that are before a trial court. The circuit court’s issuance of a writ of mandamus to the probate court did not constitute a judgment on any claims brought by the parties. Regions appealed the issuance of the writ, not the disposition of one or more claims. Thus, the mechanism provided by Rule 54(b), Ala. R. Civ. P., for certification has no application here because there is no claim or party over which entry of a judgment was made by the circuit court in the mandamus proceeding.
*878 Section 12-22-6, Ala.Code 1975, explicitly authorizes the appeal of a circuit court’s issuance of a writ of mandamus. Section 12-22-6, provides, in pertinent part:
“Appeals may be taken to the appro- ■ priate appellate court from the judgment of the circuit court on application for writs of certiorari, supersedeas, quo warranto, mandamus, prohibition, injunction and other remedial writs as provided by the Alabama Rules of Appellate Procedure.... But this section shall not be construed as to prevent the presentation of an issue upon appeal taken after a final determination of the case.”
See also Ex parte A.S., 3 So.3d 842, 845 (Ala.2008) (citing § 12-22-6 for the proposition that “an appeal, not a petition for the writ of mandamus, is the proper avenue for challenging a circuit court’s disposition of a petition for the writ of mandamus”). It follows from these authorities that the appeal of the circuit court’s issuance of the writ of mandamus in this case is permitted. Accordingly, we deny the sisters’ motion to dismiss Regions’ appeal of the circuit court’s ruling on the sisters’ petition for a writ of mandamus.
The threshold question before us in both Regions’ appeal and its petition for a writ of mandamus is whether § 19-3B-203(b), Ala.Code 1975, grants the probate court jurisdiction to hear the claims brought by the sisters in the circuit court action. Section 19-3B-208 provides:
“(a) Except as provided in subsection (b), the circuit court has exclusive jurisdiction of proceedings in this state brought by a trustee or beneficiary concerning the administration of a trust.
“(b) A probate court granted statutory equitable jurisdiction has concurrent jurisdiction with the circuit court in any ■ proceeding involving a testamentary or inter vivos trust.”
The Alabama Comment to § 19-3B-203 states, in part:
“Subsection (b) recognizes that by local acts, the probate courts of Jefferson and Mobile Counties have been granted equity jurisdiction. See Jett v. Carter, 758 So.2d 526 (Ala.1999), discussing Act No. 1144, Ala. Acts 1971 (Reg.Session) (Jefferson), and Act No. 91-131, Ala. Acts 1991 (amending Act No. 974, § 5, Ala. Acts 1961 (Reg.Session)) (Mobile).”[8]
As this Court has recognized, Act No. 1144, Ala. Acts 1971,
“grants to the Jefferson Probate Court ‘general jurisdiction concurrent with that of the Circuit Courts of this State, in equity, in the administration of the estates- of deceased persons, minors and insane or non compos mentis persons, including testamentary trust estates.’ (§ 1.) Thus, Act No. 1144 grants the Jefferson Probate Court broader jurisdiction than is otherwise granted to the probate courts of this state.”
Jett v. Carter, 758 So.2d 526, 529 (Ala.1999).
The parties’ divergent interpretations of § 19-3B-203(b) track the different interpretations offered by the probate court and the circuit court. Regions argues, as the probate court held, that § 19-3B-203(b) grants the probate court concurrent jurisdiction with the circuit court in proceedings involving testamentary or inter vivos trusts. Under this interpretation, the probate court has jurisdiction to hear any claim involving the subject trusts, including claims for money damages that concern “the liability of a trustee for an action relating to the trust” and to “compel *879 redress of a breach of trust by any available remedy.” § 19-3B-201(d)(18), Ala. Code 1975. Regions insists that this interpretation comports with the requirement in § 12-13-l(a), Ala.Code 1975, that probate courts “shall have original and general jurisdiction as to all matters mentioned in this section and shall have original and general jurisdiction as to all other matters which may be conferred upon them by statute, unless the statute so conferring jurisdiction expressly makes the jurisdiction special or limited.” In short, Regions contends that § 19-3B-203(b) expands, rather than limits, the probate court’s jurisdiction as it pertains to inter vivos trusts.
The sisters argue, as the circuit court held, that Alabama law provides that “[t]he circuit court shall have exclusive original jurisdiction of all civil actions in which the matter in controversy exceeds ten thousand dollars ($10,000),” § 12 — 11— 30, Ala.Code 1975, and that § 19-3B-203(b) does not alter the circuit court’s exclusive jurisdiction or enlarge the probate court’s jurisdiction such that the probate court is permitted to hear claims for such money damages. Instead, according to the sisters, § 19-3B-203(b) limits the jurisdiction of the Jefferson Probate Court — and the probate courts of Mobile and Shelby Counties — to matters of equity in relation to trusts. According to the sisters, the majority of their claims against Regions are claims at law, not claims in equity, and thus § 19-3B-203(b) does not grant the probate court jurisdiction over those claims. The sisters contend that their interpretation of § 19-3B-203(b) is bolstered by the Alabama Comment to subsection (b), which mentions the “equity jurisdiction” of the Jefferson Probate Court and reiterates that the Jefferson Probate Court has been “granted equity powers.”
“ ‘ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the Legislature must be given effect.” ’
“Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.l998)(quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).
“ ‘Of course, the rule is well recognized that in the construction of a statute, the legislative intent is to be determined from a consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found. The intent so deduced from the whole will prevail over that of a particular part considered separately.’
“Blair v. Greene, 246 Ala. 28, 30, 18 So.2d 688, 689 (1944).
“ ‘It is well settled that when it is interpreting a statute this Court seeks to give effect to the intent of the Legislature, as determined primarily from the language of the statute itself. Beavers v. County of Walker, 645 So.2d 1365, 1376 (Ala.1994) (citing Ex parte McCall, 596 So.2d 2 (Ala.Civ.App.199[1])); Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala.1991). Also, our rules of statutory construction direct us to look at the statute as a whole to determine the meaning of certain language that is, when viewed in isolation, susceptible to multiple reasonable interpretations. McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429 (Ala.1993).’
“Ex parte Alfa Fin. Corp., 762 So.2d 850, 853 (Ala.1999).
*880 “ ‘ “When interpreting a statute, [a court] must read the statute as a whole because statutory language depends on context; [a court] will presume that the Legislature knew the meaning of words it used when it enacted the statute.” ’
“Ex parte USX Corp., 881 So.2d 437, 442 (Ala.2003) (quoting Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003)).'”
State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 813-14 (Ala.2005).
Subsection (a) of § 19-3B-203 provides the general rule: “[T]he circuit court has exclusive jurisdiction of proceedings in this state brought by a trustee or beneficiary concerning the administration of a trust.” Subsection (a) begins, however, by noting that subsection (b) provides an exception to this general rule. A plain reading of § 19-3B-203 indicates that subsection (b) acknowledges that certain probate courts have been granted broader powers and that the exception referenced in subsection (a) is that those courts that have been granted those broader powers have the same jurisdiction to hear actions brought by trustees or beneficiaries concerning the administration of trusts as do the circuit courts of this State.[9]
We acknowledge that § 12-11-30 provides for the circuit court to have exclusive original jurisdiction of civil actions in which the matter at controversy exceeds $10,000. We note, however, that this statute operates to distinguish between the jurisdiction of circuit courts and district courts as to civil actions generally. Section 19-3B-203, Ala.Code 1975, specifically addresses actions concerning the administration of trusts. “[A] specific statute relating to a specific subject is regardéd as an exception to, and will prevail over, a general statute relating to a broad subject.” Ex parte Jones Mfg. Co., 589 So.2d 208, 211 (Ala.1991). Moreover, § 12-11-30 was last amended in 1996, whereas § 19-3B-203 was enacted in 2006. With respect to jurisdiction of actions concerning the administration of trusts, therefore, § 19-3B-203 is controlling.
Thus, the probate courts of Jefferson, Mobile, and Shelby Counties have concurrent jurisdiction with the circuit courts of those counties to hear any proceeding brought by a trustee or beneficiary concerning the administration of a trust. In other words, the reference in subsection (b) of § 19-3B-203 to probate courts that have been granted “statutory equitable jurisdiction” is an identifying reference, not a limitation on the jurisdiction of the courts so identified. It is those probate courts to which subsection (b) grants “concurrent jurisdiction” with the circuit courts to hear actions concerning the administration of a trust brought by a trustee or beneficiary.[10]
*881 The sisters insist that even if the probate court has been granted jurisdiction under § 19-3B-203(b), Ala.Code 1975, to hear any proceeding involving an inter vivos trust brought by a trustee or beneficiary, allowing the probate court to hear the claims they brought in the circuit court action would deprive them of their right to a trial by jury, which is protected by Art. I, § 11, Ala. Const.1901. The sisters argue that some of the claims in their complaint — such as the negligence, wantonness, fraud, negligent indemnity, and conspiracy claims — are tort claims seeking money damages that carry with them a right to trial by jury. They observe that, in contrast,
“ ‘[tjhere is no common law right to a trial by jury in the probate court....’ Ex parte Floyd, 250 Ala. 154, 157, 33 So.2d 340, 342 (1947); Hanks v. Hanks, 281 Ala. 92, 199 So.2d 169 (1967). The right to a jury trial in probate court depends upon a statutory grant of that right.”
Kemp v. Kroutter, 531 So.2d 854, 855 (Ala.1988).
The problem with the sisters’ argument is that the clear gravamen of their complaint in the circuit court action with regard to their claims against Regions as trustee or cotrustee involves “essentially the administration of a trust, when a trial by jury is not allowed. See Ex parte Floyd, [250 Ala. 154, 33 So.2d 340 (1947)].” Hanks v. Hanks, 281 Ala. 92, 98, 199 So.2d 169, 174 (1967). Their claims of negligence, wantonness, fraud, and the like are derivatives of their claim of the breach of fiduciary duty.[11] For example, in their negligence claim, the sisters allege that Regions “acted negligently” by “failing] to manage the assets held in trust for [the sisters] in the manner that a reasonably prudent investment manager would have managed said funds under the same or similar circumstances.” In their fraud claim, the sisters allege that Regions “represented to [the sisters] that the investments in The Funds were solid, safe, low-risk investments that would safely provide a secure income stream [to the sisters]” when, in fact, this representation was false. In short, all the claims against Regions as trustee involve the maladministration of the assets of the various trusts.
“It has long been the law in Alabama that where a trustee does not perform his duty to protect the trust, the beneficiaries may sue in equity to protect their rights. Supervising the administration of trusts is a well-recognized ground of equity, and the regulation and enforcement of trusts is one of the original and inherent powers of the equity court.”
First Alabama Bank of Montgomery, N. A. v. Martin, 425 So.2d 415, 423 (Ala.1982). In First Alabama Bank of Huntsville, N.A. v. Spragins, 475 So.2d 512 (Ala.1985), this Court provided a thorough explanation as to why even claims for money damages alleging the breach of a trust do not carry a right to trial by jury:
“This case involves two separate appeals: the first appeal is from a judgment in a suit by beneficiaries of a trust against First Alabama Bank of Huntsville, N.A., acting as trustee under a written trust agreement, claiming mismanagement of the trust fund and breach of a fiduciary duty, and requesting removal of the trustee and an accounting of the subject trust....
“The Bank strenuously insists that the Plaintiffs’ claim for money damages, grounded on the allegation that the Bank, as a professional trustee, breach *882 ed its fiduciary duty in its management of the trust estate, is not such a claim for money damages, cognizable at common law, as to entitle the Plaintiffs to a jury trial. We agree. While, generally speaking, a trust, created by written instrument, partakes of many of the same legal incidents as other written agreements, historically, remedies to enforce rights arising under a trust have been relegated to the exclusive jurisdiction of equity.
[[Image here]]
“Both [2] Scott [on Trusts § 16⅛ (3d ed.1967) ] and the Restatement (Second) of Trusts (1959) recognize exclusive equitable jurisdiction over remedies for a beneficiary against a trustee, with two exceptions: ‘(1) If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.® If the trustee of a chattel is under a duty to transfer it immediately and unconditionally to the beneficiary and in breach of trust fails to transfer it, the beneficiary can maintain an action at law against him.’ Restatement (Second) of Trusts, § 198 (1959). The courts of Alabama have consistently recognized and applied this common law development. Ex parte Gamer, 280 Ala. 111, 190 So.2d 544 (1966). For a ease applying the ‘at law1 exception, see Ex parte Davis, 465 So.2d 392 (Ala.1985).
[[Image here]]
“Applying this rule to the Plaintiffs’ complaint, the trial court held that the Plaintiffs were not entitled to a jury trial with respect to their demands to remove the Bank as trustee and to require an accounting of the Bank. As to the remaining request for money damages, however, the trial court held that this did create a legal issue that entitled Plaintiffs to a trial by jury.
“While the rule, as here applied, is generally correct, it is not correct with respect to trusts. As seen by the historical background, the court of equity embraced the full jurisdiction of trusts, save for the two exceptions referred to above, neither of which is applicable here.
“We recognize that the application of pure logic presents a persuasive argument for including a third exception: a claim for money damages only, based on an alleged breach of fiduciary duty. We are persuaded, however, to adhere to precedent and leave all matters pertaining to trusts, other than the two recognized exceptions, within equity’s exclusive jurisdiction.
“Because remedies of money damages based on a claim for breach of trust were not cognizable at law, we are constrained to reverse the judgment from which the first appeal is taken and to remand this cause for further consideration by the trial court.”
475 So.2d at 513-14. See also Ex parte Holt, 599 So.2d 12, 14-15 (Ala.1992) (noting that “ ‘ “[t]he basically equitable nature of an action ... for an accounting is not changed by the inclusion of a claim for damages. Such a claim only restates the basic equitable action, and in no way creates a right to trial by jury. Indeed it would make no sense that the claim for damages could change an equitable action into one at law. Damages can only be determined after an accounting of whether or not money is owed to or from [the defendant] _”’” (quoting Sanders v. Kirkland & Co., 510 So.2d 138, 141 (Ala.1987), quoting in turn Bonnell v. Commonwealth Realty Trust, 363 F.Supp. 1392, 1393 (E.D.Pa.1973)) (emphasis omitted)).
The two exceptions to the general rule discussed in Spragins — a duty of an immediate and unconditional money payment by *883 the trustee to the beneficiary or a duty of an immediate and unconditional transfer of chattel by the trustee to the beneficiary— are not applicable here. Moreover, the fact that the sisters have couched some of their claims in terms of torts such as negligence makes no difference.
“We believe Alabama law to be clear: that the plaintiffs claims here are exclusively within the realm of equity jurisdiction. This conclusion is especially compelling in this case, in which the beneficiary of the trust, until her death, was also a co-trustee. We have diligently searched for cases that would make an exception in a case where, as in this case, the beneficiary, to whom payments were to be made, was also a co-trustee, but we have found none.
“We realize, of course, that Land’s complaint is based upon SouthTrust’s alleged negligence in failing to exercise supervision and control over Payne or to employ measures sufficient to detect embezzlement of the royalties. However, we find no significant difference between the facts alleged in this case and those alleged in Spragins, ...”
Ex parte SouthTrust Bank of Alabama, N.A., 679 So.2d 645, 649 (Ala.1996).
Thus, the sisters’ claims for money damages do not entitle them to a trial by jury. The claims brought by the sisters in this case concern alleged breaches by the trustee of its fiduciary duties in relation to the trust, claims that sound in equity. As a result, the probate court retains jurisdiction over the sisters’ claims against Regions as trustee or cotrustee.
It follows from the fact that § 19-3B-203(b) grants the probate court jurisdiction over the sisters’ claims against Regions concerning the trusts as to which Regions served as trustee or cotrustee that the circuit court erred in granting the sisters’ petition for a writ of mandamus to the probate court. There remains, however, the matter of Regions’ petition to this Court for a writ of mandamus concerning the circuit court’s denial of Regions’ motion to dismiss or stay the circuit court action (case no. 1081712).
Regions contends that, because the probate court has jurisdiction to hear the sisters’ claims against Regions, as a trustee or cotrustee, concerning the trusts involved in the final-settlement action, the circuit court action is due to be dismissed under § 6-5-440, Ala.Code 1975. As a preliminary matter, we note that Regions’ motion to dismiss based on abatement depends in part upon the assumption that the claims brought by the sisters in the circuit court are in the nature of compulsory counterclaims to the final-settlement action; thus, the sisters would have to bring them in the final-settlement action or they would be waived. This assumption is, of course, correct with regard to the claims brought by the sisters in the circuit court action that pertain to the trusts for which Regions served as trustee or cotrustee, because those claims “arise[] out of the transaction or occurrence that is the subject matter of the opposing party’s claim.” Rule 13(a), Ala. R. Civ. P.
This assumption is not correct, however, with regard to the sisters’ claims concerning the Mother Trusts created for the benefit of Reed and Haynes. Regions is not a trustee or cotrustee of those trusts; therefore, those claims are not involved in the final-settlement action filed in the probate court by Regions. The claims brought by the sisters concerning the Mother Trusts created for the benefit of Reed and Haynes are not compulsory counterclaims in the final-settlement action in the probate court.
As for Regions’ contention that the sisters’ claims in circuit court against Regions involving the trusts at issue in the final-settlement action should be abated, the sisters first argue that Regions waived *884 this defense in the circuit court because it did not plead abatement in its original answer to the sisters’ complaint.
“Although Ala. Code 1975, § 6-5-440, prohibits simultaneous actions for the same cause against the same parties, the statute constitutes an affirmative defense, and if that defense is not raised by the defendant in a motion to dismiss, Benson v. City of Scottsboro, 286 Ala. 315, 817, 239 So.2d 747, 748-49 (1970) (stating that the defense must be raised by a ‘plea in abatement,’ the procedural predecessor of the motion to dismiss), it is waived. Chappell v. Boykin, 41 Ala.App. 137, 141, 127 So.2d 636, 639 (1960).”
Veteto v. Yocum, 793 So.2d 814, 815 n. 1 (Ala.Civ.App.2001).
“ ‘Typically, if a party fails to plead an affirmative defense, that defense is deemed to have been waived. Robinson v. Morse, 352 So.2d 1355, 1356 (Ala.1977) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1278, pp. 339-52); see also Rule 8(c), Ala. R. Civ. P. However, there are exceptions to this rule, one of which is that an affirmative defense can be revived if a party is allowed to amend his pleading to add the defense. Piersol v. ITT Phillips Drill Div., Inc., 445 So.2d 559, 561 (Ala.1984) (stating that “where no actual prejudice to the opposing party is shown, and no undue delay is demonstrated, a court may permit the amendment of the answer to include a defense of the running of the period of the statute of limitations, though Rule 8(c) of the Alabama Rules of Civil Procedure requires such a defense to be pleaded as an affirmative defense”).’ ”
Ziade v. Koch, 952 So.2d 1072, 1075 (Ala.2006) (quoting Ex parte Liberty Nat’l Life Ins. Co., 858 So.2d 950, 953 (Ala.2003)).
As we noted in the rendition of the facts, Regions filed an answer to the sisters’ complaint on January 8, 2009. The first answer did not contain a plea of abatement. Regions filed an amended answer on February 9, 2009, however, in which it asserted abatement as a defense to the action. On the same date, Regions filed its motion to dismiss or to stay the circuit court action based on § 6-5-440. The sisters filed a motion on March 4, 2009, to strike the amended complaint, arguing that Regions had waived the defense of abatement. The circuit court did not rule on the sisters’ motion to strike Regions’ amended answer, and in its order denying Regions’ motion to dismiss the circuit court action, the circuit court did not list waiver of the abatement defense as a reason for denying the motion. Thus, under the authority of Ex parte Liberty National Life Insurance Co., Regions revived the affirmative defense of abatement through the amendment of its complaint.
We noted in note 4 supra that § 6-5-440, Ala.Code 1975, provides that
“[n]o plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pen-dency of the former is a good defense to the latter if commenced at different times.”
This statutory directive means that “where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgments or decrees.” Ex parte Burch, 236 Ala. 662, 665, 184 So. 694, 697 (1938); see also Ex parte McMichael, 62 So.3d 465 (Ala.2010). A compulsory counterclaim is an “action” for *885 purposes of § 6-5-440. See, e.g., Ex parte J.C. Duke & Assocs., 4 So.3d 1092 (Ala.2008); Penick v. Cado Sys. of Cent. Alabama, Inc., 628 So.2d 598, 599 (Ala.1993). Moreover, it does not matter that one court is a probate court and the other is a circuit court. See, e.g., Martin v. Clark, 554 So.2d 1030, 1032 (Ala.1989) (observing that “[o]nce Mr. Clark invoked the jurisdiction of the probate court in Shelby County, he could not simultaneously bring an action involving the same subject matter in another court, even one having concurrent jurisdiction”). Accordingly, abatement is applicable in the context of these actions.
The final-settlement action was the first filed action.[12] Consequently, the claims against Regions filed by the sisters in the circuit court action concerning the trusts at issue in the final-settlement action are due to be dismissed pursuant to § 6-5-440, Ala.Code 1975. The sisters’ claims concerning the Mother Trusts established for the benefit of Reed and Haynes, for which Regions served as custodian of the assets of the trusts and the agent of trustee Stockham, are not compulsory counterclaims; therefore, the circuit court properly denied Regions’ motion to dismiss as to those claims.
Finally, there remains the matter of the sisters’ claims against MAM as the investment advisor to Regions in managing the assets of all the trusts at issue. In the last count of their complaint, the sisters charge MAM with “aiding and abetting” Regions “in carrying out each of the breaches of duty, including breach of fiduciary duty, and including each of the violations of law and obligation, committed by Regions” listed in the previous counts of the complaint. Thus, the sisters’ claims against MAM are derivative of the sisters’ claims against Regions. Accordingly, the claims against MAM that involve the trusts that are the subject of the final-settlement action concern the administration of those trusts; therefore, those claims should be brought in the probate court. The claims against MAM that involve the Mother Trusts established for the benefit of Reed and Haynes must remain in the circuit court, where the sisters’ claims against Regions concerning those trusts originated.[13]

IV. Conclusion

The sisters’ motion to dismiss Regions’ appeal of the circuit court’s writ of manda *886 mus directed to the probate court is due to be denied. Section 19-3B-203, Ala.Code 1975, gives the probate court jurisdiction to hear Regions’ action for final settlement of the trusts for which it served as trustee or cotrustee, as well as the counterclaims by the sisters against Regions concerning those trusts. Accordingly, the circuit court erred in granting the sisters’ petition for a writ of mandamus and ordering the probate court to dismiss the final-settlement action for lack of jurisdiction. We reverse the judgment of the circuit court and direct it to vacate its writ of mandamus directed to the probate court.
We grant Regions’ petition for a writ of mandamus with respect to the circuit court’s denial of its motion to dismiss the circuit court action as to the sisters’ claims against Regions and MAM that involve the trusts at issue in the final-settlement action because the abatement rule requires the dismissal of those claims. We deny the petition, however, with respect to the circuit court’s denial of Regions’ motion to dismiss the circuit court action as to the sisters’ claims against Regions and MAM that involve the trusts for which Regions served only as custodian and agent because those claims are not part of the final-settlement action.
1081619 — MOTION TO DISMISS DENIED; REVERSED AND REMANDED WITH INSTRUCTIONS.
1081712 — PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
COBB, C.J., and WOODALL, STUART, PARKER, and SHAW, JJ., concur.
LYONS and BOLIN, JJ., concur specially.

. Section 19-3B-205 provides, in pertinent part:
"(a) A trustee may file an accounting of the trustee’s administration of a trust in court at any time and seek a partial or final settlement-thereof or, upon petition of an interested party, a court may order a trustee to render an accounting of the trustee’s administration of a trust and require a partial or final settlement thereof. Notice of such judicial proceeding shall be provided to the trustee and each beneficiary, or representative thereof pursuant to Article 3, as provided by the applicable rules of civil procedure.
[[Image here]]
"(c) Any order or judgment of the court on such accounting and partial or final settlement shall be final and conclusive as to all matters occurring during the accounting period, and appeals therefrom shall and must be taken in the manner provided for from any other final judgment of the court.”

. The petition also requested final settlement with regard to the "Susan Stockham Irrevocable Trust.” It appears that this trust was another inter vivos trust created for the benefit of Stockham for which Regions served as the sole trustee. The November 14, 2008, letter the sisters sent to Regions lists this trust as one in which Regions was being removed as trustee. The Susan Stockham Irrevocable Trust is not listed in the complaint filed by the sisters against Regions, however, and it is not otherwise mentioned in the record below or discussed by the parties in their briefs.

. Section 19-3B-203(b), Ala.Code 1975, provides: "A probate court granted statutory equitable jurisdiction has concurrent jurisdiction with the circuit court in any proceeding involving a testamentary or inter vivos trust.”

. Section 6-5-440, Ala.Code 1975, provides:
“No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.”

.Also on March 26, 2009, the probate court issued an "Order and Memorandum Opinion Granting Emergency Petition for Instructions and Declaratory Relief," in response to a petition filed by Regions. The order stated that the assets of the subject trusts must remain within the jurisdiction and control of the probate court during the pendency of the final-settlement action and that it would be proper for Regions to retain said assets until such time as Compass Bank — the sisters’ designated successor trustee — voluntarily submitted to the jurisdiction of the probate court.

. Rule 42(a), Ala. R. Civ. P., provides:
"When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.”

. In its mandamus petition, Regions alternatively seeks an order directing the circuit court to vacate its August 24, 2009, order denying Regions' motion to certify for interlocutory appeal the issue whether § 19-3B-203(b), Ala.Code 1975, provides the probate court with concurrent jurisdiction to entertain the claims raised by the sisters against Regions relating to the administration of the trusts involved in these actions. We find it unnecessary to reach this request. On October 14, 2009, this Court ordered the sisters and Judge Graffeo to provide briefs in answer to Regions' mandamus petition in this Court, specifically stating that said briefs "shall address the issues of interpreting Ala.Code 1975, § 19-3B-203, and applying that statute to this case.” Therefore, the issue of the meaning of § 19-3B-203 as it pertains to the matters in the petition is squarely before us.

. Subsection (b) now also applies in Shelby County pursuant to Act No. 2003-123, Ala. Acts 2003, ratified November 29, 2004.

. Although the statutory grant of authority in § 19-3B-203(b) would appear to be sufficient in and of itself to imbue the probate courts of Jefferson, Mobile, and Shelby Counties with the jurisdiction at issue, we also note that the statutory grant made by that statute serves to fulfill the provision of Ala.Code 1975, § 12-13-1 (a), that the probate court "shall have original and general jurisdiction as to dll other matters which may be confetred upon them by statute." (Emphasis added.)

. The Alabama Comment to § 19-3B-203 is consistent with this understanding of the language in § 19-3B-203(b) referencing probate courts that have been granted statutory equitable jurisdiction as an identifying reference and not a limitation on jurisdiction. The Alabama Comment to subsection (b) notes that "[s]ubsection (b) recognizes that by local acts, the probate courts of Jefferson and Mobile Counties have been granted equity jurisdiction” and that "[t]he effect of subsection (b) is to give original jurisdiction over both testamentary and inter vivos trusts to those probate courts granted equity powers.”

. "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust.” § 19-3B-1001(a), Ala.Code 1975.

. Both the sisters in their briefs and Judge Graffeo in his response to Regions’ petition for a writ of mandamus suggest that there were procedural defects in Regions’ petition for final settlement that caused it not to be the first action filed — namely, that Regions did not file accounting documents with its petition and that it did not attached any summonses to the complaint before it served the complaint upon the sisters. Judge Graffeo did not list these alleged defects as a reason for granting the sisters’ petition for a writ of mandamus even though the sisters raised them in their petition, nor did he list them as a reason for denying Regions’ motion to dismiss the circuit court action even though the sisters raised them in their response to Regions’ motion to dismiss. Moreover, the probate court expressly concluded that "Regions’ Petition for Final Settlement was properly and timely filed.” The probate court’s order concerning the sisters’ motion to dismiss thoroughly addressed these procedural issues and we see no reason to revisit them.

. We recognize there may be duplication of litigation efforts as between the proceedings that will be tried in the probate court and those that will be tried in the circuit court. We are dealing here with matters of jurisdiction, however. The remedy for the jurisdiction-driven result in this or any similar case must lie with the legislature, not this Court. Compare, e.g., Ala.Code 1975, § 12-11-41 (providing for the removal of the administration of an estate from the probate court to the circuit court); Ala.Code 1975, § 26-2-2 (providing for the removal of the administration of a guardianship or a conservatorship from the probate court to the circuit court).