DONALDSON, Judge.
Walter B. Price appeals from the judgment of the Tuscaloosa Circuit Court ("the trial court") disposing of his claims against Alabama One Credit Union ("the credit union") and William A. Lunsford. The trial court found that the claims were barred by the applicable statute of limitations. We affirm the judgment.
Facts and Procedural History
The record shows that, in 2004, Alan H. Goode, Price, Lunsford, and Lunsford's wife formed Riverfront Development, LLC ("the Riverfront company"), with the goal of developing real estate located in Tuscaloosa ("the Riverwalk property"). Goode and Price each owned a one-third interest in the Riverwalk property, and Lunsford and his wife owned the remaining one-third interest. Goode later sold his interest in the Riverwalk property to Lunsford. All of Price's claims in his complaint arise from a transaction that occurred on July 15, 2009, in which Price sold his one-third interest in the Riverwalk property.
On December 28, 2014, Price filed a complaint against the credit union, Lunsford, and several fictitiously named defendants.[1] Price alleged that, based on representations and omissions made by Lunsford and the credit union, he was fraudulently induced to sell his interest in the Riverwalk property on July 15, 2009. Price specifically alleged, among other things, that Lunsford had led him to believe that Lunsford was experiencing financial hardships and that, based on those hardships, Lunsford would have to sell his interest in the Riverwalk property to an outside party, Danny R. Butler. Price alleged that he would not be able to continue the development of the Riverwalk property in Lunsford's absence and that, therefore, he agreed to sell his interest to Butler. Price alleged that, despite the representations made to him, Butler did not purchase any interest in the Riverwalk property; instead, Lunsford was the actual purchaser of Price's interest in the Riverwalk property. Price claimed Lunsford's alleged deception was done to *939 divest Price of his interest in the property. Price alleged claims of fraudulent misrepresentation, fraudulent suppression of material facts, promissory fraud, breach of the duty of care, breach of the duty of loyalty, and civil conspiracy against all the defendants. Price also alleged that the credit union had participated in the deception by representing that it was loaning money to Butler to purchase Price's and Lunsford's interests in the Riverwalk property. Price asserted a claim of tortious interference with a business relationship against the credit union. Price attached exhibits to his complaint to support his allegations.
A promissory note dated August 1, 2005, which was attached as an exhibit to Price's complaint, reflects a loan from Price to Lunsford in the amount of one million dollars. Price alleged that the loan to Lunsford was for a real-estate venture unrelated to the development of the Riverwalk property and that Lunsford was in default on the loan during the period leading up to the July 15, 2009, transaction. In another exhibit attached to Price's complaint, dated in November 2008, Lunsford claimed that he was suffering from financial hardships and that he did not have the cash to repay the 2005 loan from Price. Price alleged that Lunsford pointed out that if he could not continue with the development of the Riverwalk property, Price would have to carry the full financial burden of the project. As alleged in the complaint, Lunsford represented to Price in June 2009 that Butler was interested in purchasing his and Price's interests in the Riverwalk property and that he and Price should sell the property to Butler in combination with all of their interests in the Riverfront company. E-mails attached to the complaint contain communications from Lunsford to Price stating that the credit union had approved the loan to Butler for the purchase of the Riverwalk property and that, if they failed to close by July 15, 2009, Butler would no longer participate in the purchase. Price alleged that, before the sale took place on July 15, 2009, he talked to an agent of the credit union who represented to him that the sale of the Riverwalk property had to close immediately or Butler would lose his financing to purchase the property.
Among the other exhibits, Price attached to his complaint the documentation for the closing of the sale of the Riverwalk property. The documentation shows that, on July 15, 2009, Price and Lunsford conveyed their interests in the Riverwalk property to the Riverfront company. Price alleged that, at the time he signed the closing documents, he believed that Butler, acting as an agent of the Riverfront company, would be the purchaser of the Riverwalk property. Price alleged that he and Lunsford signed the closing documents at different times. Price alleged that he was the first to sign the documentation for the closing of the sale and did so without Lunsford being present and before Lunsford signed any documents. Price further alleged that Lunsford signed the documents later, in the absence of Price, both as a seller and as the manager of the Riverfront company, without Price's knowledge or consent. Price attached to the complaint various agreements executed by Lunsford as the managing member of the Riverfront company that had been recorded in the Tuscaloosa County courthouse. The agreements included a mortgage on the Riverwalk property executed on July 15, 2009, and recorded on July 21, 2009, as well as an agreement to increase the mortgage indebtedness executed on October 4, 2010, and recorded on October 25, 2010. The credit union was the lender in those agreements. Lunsford's name appears on those documents as the managing member of the Riverfront company. Butler's *940 name does not appear on any of the documents.
Price alleged that, in October 2011, Lunsford began construction of condominiums on the Riverwalk property. He further alleged that he did not learn of the alleged deception by Lunsford and the credit union until December 29, 2012, when, in a casual conversation with a third party, Jerry Griffin, he was told that, contrary to the previous representations from Lunsford and the credit union, Butler had never purchased any interest in the Riverwalk property.
On January 20, 2015, the credit union filed a motion to dismiss the complaint for the failure to state a claim upon which relief could be granted. In support of the motion, the credit union submitted Price's complaint and attached exhibits; a similar complaint and attached exhibits Price had filed in 2013, making substantially similar allegations, that had been dismissed without prejudice; and an agreement executed by Price on July 15, 2009, transferring his interest in the Riverfront company to Lunsford. Price's 2013 complaint, some of the documents attached to that complaint, and the agreement transferring Price's interest in the Riverfront company had not been attached to or specifically referenced in Price's complaint.
The credit union argued that Price had actual and constructive knowledge of any alleged fraud in July 2009 and, consequently, that the period in which to file his claims had expired two years later pursuant to § 6-2-38(l ), Ala.Code 1975. That statute provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." Price had attached a deed and a settlement statement from the Department of Housing and Urban Development ("the settlement statement") to his complaint as documentation of the closing of the sale of the Riverwalk property. The deed conveyed the Riverwalk property from Lunsford and Price to the Riverfront company. The deed contains the signatures of Lunsford and Price on the signature lines above their printed names as grantors. The settlement statement lists the fees and services charged to the borrower by the credit union as the lender for the loan to purchase the Riverwalk property. In the settlement statement, the names of Lunsford and Price are printed below the signature lines for the sellers, and each of their names is signed on the appropriate signature line. The Riverfront company's name is printed above the signature line for the borrower, and "William A. Lunsford, Manager" is printed below that line. Lunsford's name is signed on the signature line for the borrower.
The July 2009 agreement transferring Price's interest in the Riverfront company states, in relevant part:
"This Assignment Agreement dated July 15, 2009, is by and between Cathy H. Lunsford (Cathy), William A. Lunsford ('Bill'), and Walter B. Price ('Wally').
"WHEREAS, Bill, Cathy and Wally are Members in a limited liability company known as Riverfront Development, L.L.C., an Alabama Limited Liability Company, ('Riverfront'); and
"WHEREAS, Wally desires to assign all of his Membership Interest in Riverfront to Bill, in such percentage amount as shown on the attached Exhibit 'A' and upon the terms and conditions set forth in this Agreement,
"NOW, THEREFORE, for and in consideration of good and valuable consideration, the parties agree as follows:
"1. Wally assigns to Bill all of Wally's Membership Interest in Riverfront, *941 in an amount equal to the allocations of Membership Interests specified on the attached Exhibit 'A'.
"....
"5. Bill and Cathy subsequent to the above assignments, own Membership Interest in Riverfront as set forth on Exhibit 'B'."
Exhibit A to the agreement states that Price assigns all of his 33 1/3% membership interest in the Riverfront company to Lunsford. Exhibit B states that Lunsford's new membership interest in the Riverfront company is 83 1/3% and that Cathy Lunsford's interest is 16 2/3%. The names of Price, Lunsford, and Cathy Lunsford are signed above their respective printed names in the document.
On January 27, 2015, Lunsford filed a motion to dismiss the complaint for failing to state a claim upon which relief could be granted, also arguing, in part, that Price's claims were time-barred. Lunsford did not attach any exhibits to his motion to dismiss.
On March 20, 2015, Price filed responses to the motions to dismiss. In the responses, Price noted that if the trial court were to consider the materials submitted with the credit union's motion that were external to his complaint, the motion would be converted into a motion for a summary judgment and the trial court would be required to treat the motion as provided in Rule 56, Ala. R. Civ. P. In response to the contention that his claims were time-barred, Price argued that the statute of limitations was tolled as to his claims pursuant to § 6-2-3, Ala.Code 1975, which provides: "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute the action." Price alleged that he did not discover the fraudulent activities of Lunsford and/or the credit union until his conversation with Griffin on December 29, 2012. Price submitted affidavits from himself and Griffin. Both testified that, during a conversation on December 29, 2012, Griffin informed Price that he understood that Butler had not purchased the Riverwalk property and did not hold any interest in the Riverfront company.
Price further argued that he could not have discovered the allegedly fraudulent activities of Lunsford and the credit union when he executed the documents for the closing of the sale of the Riverwalk property. His affidavit in support of his responses contained the following testimony:
"11. On July 13, 2009, I was sent a proposed HUD One Settlement Statement sent to me by facsimile from [the credit union]. The borrower was listed as [the Riverfront company]. This in no way as alleged in the Motion to Dismiss filed by [the credit union] would have alerted me that Danny Ray Butler was not the purchaser of the Riverwalk property or the [Riverfront company] nor led me to inquire. In fact, I was told that Danny Ray Butler was purchasing our entire interest in [the Riverwalk property] through [the Riverfront company] by W.A. Lunsford and Danny Ray Butler. I believed it because Debbie Nichols, [the credit union's] Loan Officer in charge of conducting the closing, made representations to me that Danny Ray Butler had to close by that date, I relied upon these representations and this HUD One proposed settlement statement and statements by W.A. Lunsford and Danny Ray Butler to believe that the Lunsfords were conveying their entire interest out of financial necessity and that Danny Ray Butler was the purchaser and would lose his financing *942 if I didn't act to close on that day. I had no interest in divesting myself of my interest in [the Riverwalk property] that I had worked so diligently to procure. I would have never sold my interest to the Lunsfords, any LLC or other business entity which they owned, I specifically stated to W.A. Lunsford and Danny Ray Butler that I did not want to sell, but was doing so because I could not stand alone financially to continue the project....
"12. On July, 15, 2009, I was misled by the [credit union's] closing officer and by the final HUD Settlement Statement presented to me at closing. At the time this document was signed by me, W.A. Lunsford's line for signature as Seller was unsigned and the line for signature of the Borrowers and Manager of [the Riverfront company] was unsigned. At the time I signed all the closing documents, I asked the closing officer when W.A. Lunsford and Danny Ray Butler would be by to sign the closing documents. The [credit union] closing officer replied that they would be by later that day to sign all the necessary documents. I did not receive copies of the fully executed documents, including the HUD statements, until January of 2013. Up until my December 29, 2012, conversation with Jerry Griffin, it was my firm belief that the Lunsfords and I had sold all our interest in the Riverwalk Property and the [Riverfront company].
"13. I believed the false representations made by W.A. Lunsford that he was forced to sell his interest in the ... Riverwalk [property] and [the Riverfront company] to Danny Ray Butler, because of his poor financial condition. I also believed the false representations made by Debbie Nichols an officer at [the credit union], along with the misrepresentations made by Danny Ray Butler that he was the purchaser and he was the one obtaining the financing from [the credit union]. These false representations were made in order to remove me as a partner from the [Riverfront company] and as a co-owner of [the Riverwalk property]."
On June 12, 2015, the trial court conducted a hearing in which it heard arguments from counsel of all parties on the motions filed by the credit union and Lunsford. On June 29, 2015, the trial court entered a judgment, finding:
"1. [Price's] claims are barred by the statute of limitations.
"2. Price has not pled facts in the Complaint showing that he is entitled to tolling pursuant to Ala.Code § 6-2-3, nor is tolling applicable. See DGB, LLC v. Hinds, 55 So.3d 218, 226 (Ala.2010)."
In the judgment, the trial court granted the motions to dismiss filed by the credit union and Lunsford, and it dismissed the complaint with prejudice.
On July 17, 2015, Price filed a Rule 59, Ala. R. Civ. P., motion to alter, amend, or vacate the judgment, arguing that his claims were not time-barred. He also argued that, because the trial court had not excluded materials outside of the pleadings in reaching its judgment, it had converted the motions to dismiss into motions for a summary judgment, and, thus, he argued, he should have been permitted to conduct discovery. Along with the Rule 59 postjudgment motion, Price filed a motion for leave to amend his complaint, attaching a proposed amended complaint. The credit union and Lunsford both filed responses to Price's postjudgment motions. On August 19, 2015, the trial court entered an order denying Price's Rule 59 postjudgment motion. There is no ruling in the record on the postjudgment motion to amend the complaint.
*943 On August 31, 2015, Price filed a notice of appeal to the supreme court. The supreme court transferred the appeal to this court pursuant to 12-2-7(6), Ala.Code 1975.
Discussion
We first address Price's contention that the motions to dismiss filed by the credit union and Lunsford were converted to motions for a summary judgment. Rule 12(b), Ala. R. Civ. P., provides, in part:
"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, [Ala. R. Civ. P.] and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
Materials submitted in support of a motion to dismiss for failure to state a claim upon which relief can be granted that are referenced in the complaint are not considered to be "outside the pleading." See Snider v. Morgan, 113 So.3d 643, 648 (Ala.2012) (holding that a motion to dismiss was not converted to a motion for a summary judgment when materials submitted in support of the motion had been referenced in the complaint). However, materials submitted in support of such a motion that were not referenced in the complaint or submitted with the complaint are deemed to be outside the pleadings.
"When materials outside the pleadings accompany a motion to dismiss, the trial court is 'not bound to limit itself to the pleadings.' Papastefan v. B & L Constr. Co., 356 So.2d 158, 160 (Ala.1978). '[W]here matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment ... regardless of its denomination and treatment by the trial court.' Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala.1986). Indeed, unless the trial court expressly declines to consider the extraneous material, its conclusions may be construed to include the extraneous material. Cf. Ex parte Liberty Nat'l Life Ins. Co., 825 So.2d 758, 763 n. 1 (Ala.2002) (trial court's express refusal to consider extraneous material constituted an exclusion).
"The text of Rule 12(b) is clear and obligatory-when a motion to dismiss is converted to a motion for a summary judgment, the motion shall be 'disposed of as provided in Rule 56 [, Ala. R. Civ. P.],' and the nonmovant 'shall be given reasonable opportunity to present all material made pertinent to such a motion.' (Emphasis added.) Construing Rule 12 and Rule 56 together, this Court has stated: 'Together, Rules 12 and 56 require that the nonmovant receive (1) adequate notice that the trial court intends to treat the motion as one for summary judgment and (2) a reasonable opportunity to present material in opposition.' Graveman v. Wind Drift Owners' Ass'n, 607 So.2d 199, 202 (Ala.1992)."
Phillips v. AmSouth Bank, 833 So.2d 29, 31 (Ala.2002).
In Lawson State Community College v. First Continental Leasing Corp., 529 So.2d 926, 928 (Ala.1988) (overruled on other grounds by Berner v. Caldwell, 543 So.2d 686 (Ala.1989) ), our supreme court determined that a trial court's consideration of materials one defendant had submitted with a motion for a summary judgment "also subsumed the evidentiary matters at issue in the pending motion to dismiss" pursuant to Rule 12(b)(6) filed by another defendant. See also *944 Latham v. Redding, 628 So.2d 490, 492 (Ala.1993) (affirming trial court's treatment of one defendant's motion to dismiss pursuant to Rule 12(b)(6) as a motion for a summary judgment when plaintiff had filed affidavits in its response to another defendant's motion for a summary judgment and the affidavits bore on the issue of liability of the defendant filing the converted motion). Because all the parties in Lawson recognized that materials outside of the pleadings were before the trial court when it considered all the motions, the motions to dismiss were converted into motions for a summary judgment even though the trial court had referred to the motions in its judgment as motions to dismiss. Lawson, 529 So.2d at 928.
In this case, the credit union filed a motion to dismiss for failure to state a claim upon which relief could be granted on the basis that the statute of limitations barred Price's claims, but it submitted both materials referenced in the complaint and materials not referenced in the complaint. One of the submitted materials not specifically referenced in the complaint was the agreement whereby Price transferred his interest in the Riverfront company to Lunsford. That agreement provides substantial evidence regarding whether the limitations periods applicable to Price's claims were tolled. Even though Lunsford did not attach any materials to his motion to dismiss for failure to state a claim upon which relief could be granted, the same limitations issue was raised in Lunsford's motion, and the trial court, in its judgment, granted both motions on the ground that Price's claims were barred by the statute of limitations. In his responses to the motions, Price recognized that materials outside the pleadings had been submitted by the credit union. No party sought to exclude the materials outside the pleadings from consideration by the trial court, and the trial court did not expressly exclude those materials from its consideration. Therefore, it is clear that the motions were converted into motions for a summary judgment.
On appeal, Price argues that he was deprived of a reasonable opportunity to present materials in opposition to the credit union's and Lunsford's motions. Rule 12(b) provides, in part:
"[T]he motion ... treated as one for summary judgment [shall be] disposed of as provided in Rule 56, [Ala. R. Civ. P.,] and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
In Phillips v. AmSouth Bank, our supreme court stated:
"The text of Rule 12(b) is clear and obligatory-when a motion to dismiss is converted to a motion for a summary judgment, the motion shall be 'disposed of as provided in Rule 56 [, Ala. R. Civ. P.],' and the nonmovant 'shall be given reasonable opportunity to present all material made pertinent to such a motion.' (Emphasis added.) Construing Rule 12 and Rule 56 together, this Court has stated: 'Together, Rules 12 and 56 require that the nonmovant receive (1) adequate notice that the trial court intends to treat the motion as one for summary judgment and (2) a reasonable opportunity to present material in opposition.' Graveman v. Wind Drift Owners' Ass'n, 607 So.2d 199, 202 (Ala.1992)."
833 So.2d at 31. In addressing the procedure for treating a Rule 12(b)(6) motion converted into a Rule 56 summary-judgment motion under the federal rules of civil procedure, the United States Court of Appeals for the Second Circuit has held:
"Compliance with [the procedural] requirements [of Rule 56(c), Fed.R.Civ.P.], however, is not an end in itself. The *945 [trial] court's conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form. The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings. Resolution of this issue will necessarily depend largely on the facts and circumstances of each case. See, e.g., Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 393 (6th Cir.1975). A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss, see, e.g., National Family Ins. Co. v. Exchange Nat'l Bank of Chicago, 474 F.2d 237 (7th Cir.), cert. denied, 414 U.S. 825, 94 S.Ct. 129, 38 L.Ed.2d 59 (1973). Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted, see, e.g., Condon v. Local 2944, United Steelworkers of America, 683 F.2d 590, 593-94 (1st Cir.1982) (no surprise where defendant supported motion with affidavits and plaintiff had time to furnish information raising a genuine factual issue); Cook v. Hirschberg, 258 F.2d 56, 57-58 (2d Cir.1958) (defendants' filing of affidavits with their motion to dismiss both converted it to a motion for summary judgment and put plaintiffs on notice of their obligation to disclose the merits of their case)."
M.J.M. Exhibitors, Inc. v. Stern, 770 F.2d 288, 295 (2d Cir.1985). See also Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 487-88 (6th Cir.2009) (describing the requirement of advance notice of the conversion of a motion to dismiss to a motion for a summary judgment as "flexible and that a failure to give notice will result in reversal only if there was sufficient prejudice to the non-moving party," and quoting from 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1366 : " '[T]he absence of formal notice will be excused when it is harmless or when the parties were otherwise apprised of the conversion ... and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion.' ").[2]
The credit union filed its motion and attachments on January 20, 2015, and Lunsford filed his motion on January 27, 2015. The trial court conducted a hearing on the motions on June 12, 2015, almost five months later. Both motions were clearly directed to whether Price's claims were time-barred, and Price submitted affidavits bearing on that issue in response to the motions. The time between the filing of the credit union's motion and the date of the hearing appears to have provided Price with ample opportunity to present materials in response to the motions and to the credit union's assertions based on materials submitted outside the complaint. Although we do not have a transcript of *946 the hearing on the motions, there is no indication that any party requested a continuance or sought additional time to address the motions before the trial court conducted the hearing and issued its ruling. We conclude that any failure to strictly comply with the notice provisions of Rule 56(c), Ala. R. Civ. P., was harmless or otherwise has not been shown to have caused prejudice to Price and that Price was not deprived of an opportunity to present materials in opposition to the motions.
Price further argues that the trial court should have permitted him to conduct discovery pursuant to Rule 56(f), Ala. R. Civ. P., before entering a summary judgment. Rule 56(f) permits a party to submit an affidavit setting forth reasons why the party cannot adequately respond to a motion for a summary judgment without a continuance of the hearing to allow the party to obtain the information necessary to adequately respond. Price does not specifically point to any materials he submitted before the hearing on the motions filed by Lunsford and the credit union that could be construed as being in compliance with Rule 56(f). In support of his position, Price appears to rely on the decision in Phillips v. AmSouth Bank, supra, in which "[the supreme court] reversed a summary judgment, holding that the trial court had exceeded its discretion by entering the judgment only five days after a Rule 56(f) motion had been filed in a case in which no discovery had been conducted." Carraway v. Kurtts, 987 So.2d 512, 516 (Ala.2007) (citing Phillips, 833 So.2d at 32 ). However, the decision in Phillips does not stand "for the proposition that a motion for a summary judgment may not be granted before discovery is completed." Id. The supreme court explained in Carraway:
"Such a proposition is a misinterpretation both of the holding in Phillips and of the substance of Rule 56, Ala. R. Civ. P. Rule 56(c)(3) provides: 'The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Where a party has had insufficient time to conduct the discovery necessary to oppose such a motion, Rule 56(f) allows the trial court discretion to 'deny the motion for summary judgment or ... order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or ... [to] make such other order as is just.' "
Id.
We note that there is no indication in the record that Price brought his alleged need for discovery to the attention of the trial court before the judgment was entered. Cf. Tucker v. Richard M. Scrushy Charitable Found., Inc., 93 So.3d 83, 87 (Ala.2012) ("By the plain language of the rule, compliance with the notice provision in Rule 56(c) may be excused with the consent of the parties."). Although Price asserted in his Rule 59 postjudgment motion that he should have been allowed to conduct discovery, he never presented reasons to the trial court as to why discovery was needed or how such discovery would have impacted the issue regarding the statute-of-limitations defense. Unlike the nonmovants in Phillips, Price does not contend that he should have been afforded discovery regarding any of the credit union's factual assertions or that the ruling on its motion should have been postponed. Accordingly, we conclude that Price has not demonstrated a procedural ground for reversing the summary judgment.
Price additionally argues that the trial court should have granted his postjudgment *947 motion to amend his complaint. Price does not provide legal authority to establish any reversible error regarding his attempt to amend the complaint following the entry of the judgment disposing of the case, and we therefore decline to further consider that issue. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) ("Rule 28(a)(10) [, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived.").
We now turn to Price's argument that his claims were not barred by the statute of limitations. We apply the following standard of review to a summary judgment:
"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989) ; Ala.Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989)."
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
Price does not dispute that all of his claims in the complaint filed on December 28, 2014, were subject to a two-year statute of limitations and would be barred if the time to commence his action began to run on July 15, 2009. Price argues, however, that, pursuant to § 6-2-3, Ala.Code 1975, the limitations period applicable to his claims did not begin to run until December 29, 2012, the date he alleges he was informed by Griffin of facts leading to his discovery of the possibility of fraud. "[ Section] 6-2-3 applies not only to the tort of fraud, but also to torts where the existence of the cause of action has been fraudulently concealed," Weaver v. Firestone, 155 So.3d 952, 957 (Ala.2013) (citing DGB, LLC v. Hinds, 55 So.3d 218, 224-25 (Ala.2010) ). We accordingly consider Price's arguments that his alleged discovery of fraud by the credit union and Lunsford tolled the statute of limitations for all of his claims, which include both fraud claims and non-fraud claims.
As the basis for his claims, Price alleged that the fraudulent representations of Lunsford, Butler, and employees of the credit union led him to believe that Butler was receiving financing from the credit union and that he was purchasing Lunsford's and Price's interests in the Riverwalk property and the Riverfront company on July 15, 2009. In their motions, the credit union and Lunsford argued that Price had notice of the alleged fraud from the settlement statement that shows that Lunsford, not Butler, was the borrower in the purchase transaction. The credit union also presented the agreement in which *948 Price transferred his interest in the Riverfront company to Lunsford. In response, Price argued that he relied on the alleged misrepresentations in executing the documents for closing the transaction and that, when he signed the settlement statement, the settlement statement specified that the Riverfront company was the borrower and the signature line for the borrower was still blank.
The reasonable-reliance standard applies to assertions of reliance on fraudulent misrepresentations in determining when the statute-of-limitations period begins to run. See Gilmore v. M & B Realty Co., 895 So.2d 200, 209 (Ala.2004) (applying the reasonable-reliance standard to determine whether fraud claims were time-barred). The reasonable-reliance standard requires the plaintiff to have acted as " ' " a reasonably prudent person exercising ordinary care" ' " in relying on a misrepresentation. Id. (quoting Foremost Ins. Co. v. Parham, 693 So.2d 409, 418 (Ala.1997), quoting in turn Johnson v. State Farm Ins. Co., 587 So.2d 974, 977-79 (Ala.1991) ).
"Under the reasonable-reliance standard, a judgment as a matter of law in favor of the defendant in a fraud case is appropriate where the party who claims fraud in the transaction was fully capable of reading and understanding the terms of the contract involved in the transaction, but instead blindly relied on the defendant's oral representations to the exclusion of written disclosures in the contract to the contrary."
Massey Auto., Inc. v. Norris, 895 So.2d 215, 218 (Ala.2004) (citing Foremost Ins. Co., 693 So.2d at 421 ).
The linchpin of Price's argument is that he did not question the settlement statement listing the Riverfront company as the borrower because he believed that Butler was purchasing his and Lunsford's interests in the Riverfront company. However, undisputed evidence shows that Price executed an agreement dated July 15, 2009, transferring all of his interest in the Riverfront company to Lunsford, not Butler. According to the evidence in the record, Price had experience with real-estate ventures, and he offers no evidence or allegations to show that he could not understand the agreement he executed. The plain terms of the agreement contradict the alleged misrepresentations that Butler was purchasing Price's and Lunsford's interests in the Riverfront company. Price therefore could not have reasonably relied on the alleged misrepresentations to persist in that belief, and he had knowledge of facts that alerted him to the potential for fraud. As a result, the statute-of-limitations period began running on July 15, 2009, and Price's claims were time-barred when he filed the complaint initiating this case.
Our holding on this issue does not reflect on the merits of Price's claims; rather, we hold only that those claims had to have been brought within two years of July 15, 2009. For the foregoing reasons, we affirm the judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

Price never substituted a party for any of the fictitiously named defendants, and he does not argue that any claim against the fictitiously named defendants was improperly disposed of. The judgment against the only named and served defendants is final for purposes of appellate review. See Ex parte Matthews, 447 So.2d 154 (Ala.1984).

Rule 12(b)(6), Fed.R.Civ.P., and Rule 12(b)(6), Ala. R. Civ. P., are substantially identical; moreover Rule 12(d), Fed. R. Civ. P., is substantially the same as Rule 12(b), Ala. R. Civ. P., regarding the treatment of matters outside the pleadings submitted in support of a motion to dismiss for failure to state a claim upon which relief can be granted. "Cases interpreting the Federal Rules of Civil Procedure are authority in the construction of the Alabama Rules of Civil Procedure." Bracy v. Sippial Elec. Co., 379 So.2d 582, 584 (Ala.1980).